ATWOOD  HARMON  *vs.*  FREDERIC  W.  HARMON  and  trustee.

*License  to  cut  growth may  be  inferred.   Evidence.*

License  to  cut  wood  and  timber  may  be verbal  or  it  may  be  inferred  from  circum-
stances.

The  defendant in  an  action  of  trespass  *quare  clausum*  relied  upon  a  power  of  at-
torney  given  him  by  plaintiff.   The  plaintiff  claimed  that  a  previous  power  to
his  brother  had been  revoked  and  this  one  given  to  his  father  (the  defendant)  by
reason  of  false  representations  contained  in  letters  from  several  persons,  to  the
effect  that  his  brother  was  trying  to  swindle  his  father  out  of  all  his  property:
that  his  father  was  destitute,  and  that  plaintiff  had  better  put  the  real estate  in-
to  his  father's  hands;  *held,*  that  testimony  relative  to  the  pecuniary  circum-
stances  of  the  father  at  the  time  these  letters  were  written  was  properly  re-
jected.

"On  exceptions,  the  court  will  not  consider  the  findings  of  the  jury, as  to  whether
the  verdict  is  or  is  not  against  the  weight  of  evidence."

ON  EXCEPTIONS.

This  was  an  action  of  trespass  for  breaking  and  entering  the
plaintiff's  close  at  divers  times  between  January  1, 1866, and  March
17, 1871, the  date  of  the  writ,  and  for  cutting  and  carrying  away
wood  and  timber.

The  case  shows  that  the  plaintiff  received  his  title  to  the  real
estate,  upon  which  the  trespasses  are  alleged  to  have  been  com-
mitted,  from  the  defendant,  his  father,  December  27, 1862, and
that  the  conveyance  was  without  consideration,  the  son  being  in
California  at  the  time  it  was  made ;  that  the  father  afterward  con-
tinued  in  occupation  as  before  and  paid  the  taxes  thereon.   On
the  24th  day  of  February,  1868, the  plaintiff  gave  to  the  defend-
ant  a  general  power  of  attorney,  of  the  revocation  of  which,  by  a
power  of  attorney  given  to  Hartson  Harmon,  plaintiff's  brother,
the  defendant  had  notice  about  the  seventh  day  of  February,  1870.

The  power  of  attorney  to  Hartson  Harmon  was  revoked  and  a
second  power  of  attorney  given  to  the  defendant  on  the  16th  of
March,  1870, which  was  again  revoked  on  the  17th  of  March,

1871, the day upon which the writ in this case was made. The plaintiff in his deposition, in answer to a question as to what induced him to revoke the power of attorney given to his brother Hartson, and to give a power of attorney to his father to take charge of, manage, and control the real estate, testified : " I received letters from Harris Doe, William Haskell, and Elbridge Haskell, and also other parties, that my brother was going to swindle my father out of all his property ; that he was destitute and that I had better put the real estate hereinbefore referred to, in my father's hands."

The plaintiff proposed interrogatories to several witnesses, called by him, in regard to the pecuniary circumstances of the defendant, as to whether he had stated to witness the amount of insurance money which he had in his pocket at the time of the conversation ; whether defendant had called on the witness in regard to a town order for $400 ; whether the defendant ever told the witness that he had a thousand dollars in his pocket in the spring of 1870, whether he ever told witness that he had money enough to carry him through and didn't want any of his son's help, and questions of similar import, all of which, being objected to, were excluded by the court.

The presiding judge, among other things, instructed the jury as follows : " With respect to the acts alleged to have been committed, whatever they were, from the 1st day of January, 1866, to the 24th of June, 1868, he (defendant) says he had a license, not a written license, authorizing him to cut off wood and use it, but there was an understanding between him and the defendant growing out of the relations of the parties ; the acts of the parties which in law and in fact amount to a license ; which affords him a complete protection, and answers for all the acts he did and committed upon the premises during that time. In order to show a license for doing those things, it is not necessary that there should be a written permission or authority or power of attorney. It may be verbal. It is not necessary that the parties should get together and talk the matter over, the one giving the other permission and

Harmon v. Harmon.

authority verbally and personally to do the acts. It may be inferred and proved from other circumstances, like any other fact."

The jury found for the defendant, and to the instructions and the refusal of the judge to admit the testimony above referred to, the plaintiff excepted.

*Baker & Baker*, for the plaintiff.

*E. F. Pillsbury* and *W. P. Whitehouse*, for the defendant.

APPLETON, C. J. This is an action of trespass *quare clausum fregit*. The case comes before us on exceptions. The whole evidence, however, is reported and the counsel for the plaintiff has endeavored to satisfy us that the finding of the jury was against the weight of evidence on various issues raised during the progress of the trial. That may be so, but no motion for a new trial as against evidence has been filed. All, therefore, that remains for us is to examine the validity of the exceptions which have been taken to the rulings of the presiding justice.

It seems that the parties are father and son ; that the defendant conveyed the land upon which the trespass is alleged to have been committed to his son ; that the deed was without consideration and without the knowledge of the son at the time that it was given, and that after the deed was recorded the father remained in possession as before, paying the taxes thereon, etc.

The presiding justice after calling the attention of the jury to the relationship of the parties and the circumstances of the case, instructed them that to show a license, it was not necessary that there should be a written permission or authority or power of attorney ; that it might be verbal or inferential from circumstances, and then left it for the jury " to determine whether there was or was not a license for the defendant to do what he did."

The rulings on these points were in accordance with law. A license may be created by parol. *Ricker* v. *Kelley*, 1 Greenl. 117 ; *Batchelder* v. *Sanborn*, 24 N. H. 479. So it may be inferred from the relations of the parties and the circumstances of the case. *Lakin* v. *Ames*, 10 Cush. 198.

No incorrect rule of law was given to the jury. If any further instructions were needed for the better elucidation of the case, the counsel for the plaintiff should have requested them. If there were any error of fact in the finding of the jury it is not before us for correction.

There were trespasses claimed to be committed between different periods of time, as they are specified in the charge of the judge. As to the fact of their commission, that was left to the judgment of the jury.

It seems that the plaintiff on or about the 24th of June, 1868, gave his father a power of attorney, which remained in force until Feb. 9, 1870, when it was revoked and one was given to his (plaintiff's) brother. While this power of attorney was in force, it is not claimed that the defendant is responsible in trespass for any acts done under it.

On the 16th day of March, 1870, or about that time, the power of attorney last mentioned was revoked and a new power given by the plaintiff to his father, which remained in force until its revocation in 1871. The plaintiff seeks to recover for trespasses claimed to have been committed during this last-mentioned period, on the ground that the defendant obtained the power of attorney by fraudulent misrepresentations.

The question of fraud in obtaining the last-mentioned power of attorney was submitted to the jury, and the fact was negatived by their verdict.

But the plaintiff claims that evidence tending to establish the fraud was improperly excluded. In his deposition, in answer to the inquiry why he revoked the power of attorney given his brother, Hartson Harmon, and gave a new power to his father to take charge of and manage and control his real estate, his answer is as follows: " I received letters from Harris Doe, William Haskell, and Elbridge Haskell, and also other parties, that my brother was going to swindle my father out of all his property; that he was destitute and that I had better put the real estate hereinbefore referred to in my father's hands."

It is claimed that evidence to contradict the letters thus alleged to be the ground of the revocation of one power of attorney and the giving of another, should have been admitted.   But the letters in question only state that " Oliver and Hartson are trying to hurt your father ;" that "Harts. and the rest of the boys, Will and John, they are trying to get every cent he has got and turn him out for himself; and this land he gave you, they are bound to get it away from him and I think you ought to hang to your father."

Now, these letters are mainly advisory.   They do not say that the father was destitute, but that he might become so, nor that one of his sons (my brother) was going to swindle him out of his property, but the boys were trying to get his property.

Now, however these letters are to be regarded, the evidence offered and excluded can hardly be deemed as contradictory to the statements contained therein.   Whether the defendant stated that he had the insurance money received for his mill that had been burnt, whether he had a town order for $400, whether he stated he had money enough to carry him through and did not want any of his son's help, whether he ever said he had a thousand dollars in his pocket, whether in Feb., 1870, he was worth from $2,500 to $3,000, were questions, howsoever answered, which would not contradict the statements contained in the letters which, as the plaintiff says, induced his action in the premises.   As for any and all other purposes, they were obviously immaterial and irrelevant.

So far as relates to the defendant's letter to the plaintiff, he does not say that was what induced his changing his attorney, but confines himself to what was said by Doe, and the Haskells and other parties, which can hardly be deemed as including his father.

The power of attorney was revocable at the will of the plaintiff. It is not denied that if properly obtained it was a protection to the defendant during its continuance.

It may well be questioned, whether the statements contained in the letters upon which the plaintiff based his action, even if untrue, would avoid and render null a power of attorney under seal. If not, then it was voidable only and in full force until revoked. If

so, while remaining in full force and not revoked, the defendant would not be a trespasser for acts done under its authority, and the instructions on this point were sufficiently favorable to the plaintiff.

*Exceptions overruled.*

CUTTING, DICKERSON, and PETERS, JJ., concurred.

DANFORTH and VIRGIN, JJ., concurred in the result.